FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. NICHOLAS LINDSEY, *Defendant-Appellant.* | No. 14-10004 D.C. No. 2:11-cr-00217-LDG-CWH-1 OPINION |

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, Senior District Judge, Presiding

Argued and Submitted March 18, 2016
San Francisco, California

Filed June 28, 2016

Before: John T. Noonan, Ronald M. Gould,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge Gould

2                     UNITED STATES V. LINDSEY

### SUMMARY[*]

**Criminal Law**

Affirming the defendant's convictions in a mortgage fraud case, the panel held that lender negligence in verifying loan application information, or even intentional disregard of the information, is not a defense to fraud, and so evidence of such negligence or intentional disregard is inadmissible as a defense against charges of mortgage fraud.

The panel further held that, when a lender requests specific information in its loan applications, that information is objectively material as a matter of law, regardless of the lenders' policies or practices with respect to use of that information.

### COUNSEL

William H. Gamage, Gamage & Gamage, Las Vegas, Nevada, for Defendant-Appellant.

Peter S. Levitt (argued), Assistant United States Attorney; Elizabeth O. White, Appellate Chief; Daniel G. Bogden, United States Attorney; United States Attorney's Office, Las Vegas, Nevada; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GOULD, Circuit Judge:

We address the admissibility of certain evidence in mortgage fraud cases. We affirm the convictions, rejecting appellant's contentions that evidence was improperly excluded and that he was denied the ability to present a defense. In a separate memorandum disposition filed concurrently, we reject other challenges to the convictions and some challenges to the sentence.

Nicholas Lindsey, a former mortgage loan officer and real estate broker, appeals his convictions and sentence for nine counts of wire fraud and one count of aggravated theft. For several years, Lindsey was involved in a complex mortgage fraud scheme that involved convincing individuals to "buy" residential properties in exchange for financial assistance. In some cases, Lindsey built up these individuals' credit ratings and deposited money into their bank accounts in order to fraudulently secure mortgages. He also submitted falsified loan documents to lenders in order to make the individuals appear more creditworthy, including falsely stating the applicants' earned income. The properties secured through this scheme were destined for foreclosure, creating large losses for financial institutions[1] while Lindsey benefitted

---

[1] As reflected in the Presentence Report and as testimony at sentencing indicated, the loans and/or properties at issue in this case appear to have been purchased from the original lender by a second financial institution. Thus the victims in this case—at least for the purposes of restitution—are the second financial institutions that suffered losses at the time of foreclosure, not the original lenders.

financially from commissions, rent payments, and diverted escrow monies.

Lindsey was charged with wire fraud under 18 U.S.C. § 1343, which requires the government to prove that the defendant made "material" fraudulent representations, *i.e.*, representations that had "a natural tendency to influence, or [were] capable of influencing" the decisions of the lenders who made the loans. *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)); *Neder v. United States*, 527 U.S. 1, 16 (1999). At his trial, the district court precluded Lindsey from presenting evidence of lenders' practices and policies. He appeals his convictions on the ground that he was denied his constitutional right to present a defense. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we hold that lender negligence in verifying loan application information, or even intentional disregard of the information, is not a defense to fraud, and so evidence of such negligence or intentional disregard is inadmissible as a defense against charges of mortgage fraud. We further hold that, when a lender requests specific information in its loan applications, that information is objectively material as a matter of law, regardless of the lenders' policies or practices with respect to use of that information.

I

Lindsey worked for Clear Mortgage, Inc. in Nevada as a mortgage loan officer and team leader for a mortgage group. During his employment with Clear Mortgage, Lindsey recruited straw buyers for Las Vegas real estate, and, in the process, made false statements in loan applications. In one illustrative example presented at trial, Lindsey recruited

Madelon Bridges, a woman living in Louisiana with only fifty dollars to her name, to "purchase" Villa Del Mar, a house in Las Vegas worth $720,000. Lindsey flew Bridges to Las Vegas and promised to pay off her debt and give her $10,000 in exchange for acting as a straw buyer. Bridges gave Lindsey her personal identification information, including her social security number and fingerprints, and Lindsey paid off her debt and transferred money into her bank account. Lindsey also had Bridges sign a loan application that falsely represented, *inter alia*, that she intended to live at the property she was applying for a loan to purchase, paid $3,300 a month in rent, was gainfully employed, and had a sizeable bank account. After she was approved for the loan, Lindsey used Bridges's personal information to apply for another loan and purchase another home in her name without her knowledge. When Lindsey did not make mortgage payments as promised, Villa Del Mar went into foreclosure, negatively affecting Bridges's credit rating and causing losses to the lender. Lindsey perpetrated similar frauds with five straw buyers—including his sister—on nine home loans, and eight different properties. From this scheme, Lindsey profited by receiving significant commissions, rent payments, and diverted escrow monies.

Lindsey was arrested and indicted on nine counts of wire fraud under 18 U.S.C. § 1343 and one count of aggravated identity theft under 18 U.S.C. § 1028A. Before trial, the government suspected that Lindsey was planning to defend himself by claiming that the lenders were at fault for failing to verify the information in the fraudulent loan applications. The government filed a motion *in limine* to prevent Lindsey from introducing evidence of lender negligence. The district court declined to rule on the issue, concluding that a final

ruling "would be more appropriately made in the context of the development of the evidence at trial."

At trial, the district court warned Lindsey's attorney to "stay away" from the issue of lender negligence in his opening statement. When defense counsel described 2006 to 2007 as "a wild time" of mortgage lending and attempted to describe the types of loans at issue as "stated income" and "no income, no assets,"[2] the district court sustained the government's objections and warned counsel again to "stay away" from the issue of lender negligence. The district court subsequently told the parties that it was "inclined" to exclude evidence of lender negligence from the rest of trial.

During trial, Lindsey's counsel questioned a witness about previous bad loans that her employer, a lender, had provided. The government objected. The question was stricken during a sidebar in which the prosecutor informed the district court that it had already ruled on the issue of lender negligence, and he argued that defense counsel's question was irrelevant. The district court sustained the objection, striking the question from the record.

The jury convicted Lindsey of all counts. The district court sentenced Lindsey to consecutive sentences of 108 months for wire fraud and 24 months for identity theft, for a

---

[2] During opening statements, Lindsey's counsel urged that a "stated income" loan "means that the lender will rely on the borrower to state their income and state their assets," and that a "no income, no assets" loan means "the lender did not appear to know about the income or assets on that particular loan." On appeal, Lindsey describes "the stated/no doc loan type as a loan that banks offered [] which allowed applicants to provide no back up documentation for their income and assets."

UNITED STATES V. LINDSEY 7

total of 132 months. The court also imposed $2,286,911 in restitution. Lindsey timely appealed.

## II

To convict a defendant of wire fraud, the jury must find beyond a reasonable doubt: "(1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud." *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013). In order to prove a "scheme to defraud," the jury must find that the defendant employed "*material* falsehoods." *Neder*, 527 U.S. at 20. "In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Id.* at 16 (alteration in the original) (quoting *Gaudin*, 515 U.S. at 509).

The element of materiality is evaluated under an objective test, in which the Court must examine "the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end." *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting *United States v. Facchini*, 832 F.2d 1159, 1162 (9th Cir. 1987)). To be material, "the statement need have only the propensity or capacity to influence or affect [the lender's] decision. Materiality, therefore, is not measured by effect or magnitude." *Facchini*, 832 F.2d at 1162 (citations omitted). In sum, "the government does not have to prove actual reliance upon the defendant's misrepresentations" to satisfy the element of materiality. *Neder*, 527 U.S. at 25 (quoting *United States v. Stewart*, 872 F.2d 957, 960 (10th Cir. 1989)).

Lindsey contends that the district court erred by preventing him from presenting evidence about the "stated income/no doc" loans, thus barring him "from challenging the materiality of false statements on a loan type that invites the applicant to state their income without justification or support." According to Lindsey, this prevented him from presenting a complete defense, a right that is constitutionally protected. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (internal citations and quotation marks omitted). We review a district court's decision to preclude a defendant's proffered defense *de novo*. *See United States v. Ibarra-Pino*, 657 F.3d 1000, 1003 (9th Cir. 2011); *United States v. Forrester*, 616 F.3d 929, 934 (9th Cir. 2010).

Whether trial courts may admit evidence of a lender's decision-making process—including evidence that lenders have been careless in approving undeserving loans, or even intentional in disregarding relevant information—is an issue that has been debated in this Circuit's lower courts. *See United States v. Kuzmenko*, No. 2:11-CR-0210 JAM, 2014 WL 7140640, at *6 n.5 (E.D. Cal. Dec. 12, 2014) (collecting cases and noting that "[w]hether, and to what extent, a jury must know about the lenders' decision-making process in a mortgage fraud prosecution would appear to be an issue over which reasonable minds might disagree"). We understand the desire to see lenders shoulder responsibility for their role in the mortgage crisis of the last decade. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670–71 (9th Cir. 2012) ("The Center for Responsible Lending estimates that from 2009 to 2012, foreclosures on neighboring homes will result in lost home equity in nearly one million homes across Nevada, amounting to total lost home equity of $54.5 billion. The city

UNITED STATES V. LINDSEY 9

of Las Vegas has the second highest foreclosure rate in the nation. Considering the devastating effect of the foreclosure crisis on Nevada, it is unsurprising that the Attorney General would exercise her statutory right to" prosecute deceptive trade practices by mortgage lenders) (footnotes omitted). However, that does not mean that lenders can be victimized[3] by intentional fraudulent conduct with impunity merely because the lenders were negligent, or even because the lenders intentionally disregarded the information in a loan application. Two wrongs do not make a right, and a lender's negligence, or even intentional disregard, cannot excuse another's criminal fraud.

Several of our sister circuits have held that a fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes. *See United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) ("The susceptibility of the victim of the fraud, in this case a financial institution, is irrelevant to the analysis: If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright.") (internal citations and quotation marks omitted); *see also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) (en banc) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."); *United States v. Allen*, 201 F.3d 163, 167 (2d Cir. 2000) (per curiam) ("The victim's negligence in

---

[3] We use the words "victimized" and "victim" in this context to describe the original lenders, while acknowledging that the entities that actually lost money in this scheme at the time of foreclosure—the victims in this case for the purposes of restitution—were actually those financial institutions that purchased the loan and/or collateral from the original lenders.

10                UNITED STATES V. LINDSEY

permitting a crime to take place does not excuse the defendant from culpability for [the] substantive offense."); *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct."); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) ("The victim's negligence is not a defense to criminal conduct.").

In *United States v. Ciccone*, we rejected the defendant's argument that the government was required to prove that the defendant's fraud was calculated to defraud persons of ordinary prudence and comprehension. 219 F.3d 1078, 1083 (9th Cir. 2000). We held that "the wire-fraud statute protects the naive as well as the worldly-wise . . . . the lack of guile on the part of those solicited may itself point with persuasion to the fraudulent character of the artifice." *Id.* (internal quotation marks omitted) (quoting *United States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999), *superceded on other grounds by statute*). Although *Ciccone* discussed the elements of wire fraud, not permissible defenses, its reasoning is also persuasive here. We join several of our sister circuits in holding that a victim's negligence is not a defense to wire fraud. Evidence of lender negligence is thus not admissible as a defense to mortgage fraud.

Lindsey maintains on appeal that he did not seek to introduce evidence of lender negligence at trial, but rather "evidence of the materiality of falsehoods that may have appeared on loan applications." Without saying so explicitly, Lindsey may be arguing in substance that he wanted to introduce evidence that the banks were willing to approve the loans regardless of the information included in the application

UNITED STATES V. LINDSEY 11

forms. This implies something more than lender negligence, and approaches intentionality.

But the conduct of the lender cannot provide an effective defense based on alleged lack of materiality. Materiality is an objective test "not measured by effect or magnitude," *Facchini*, 832 F.2d at 1162, but rather by "the intrinsic capabilities of the false statement itself," *Peterson*, 538 F.3d at 1072 (quoting *Facchini*, 832 F.2d at 1162). We have previously held that "misrepresentation may be material without inducing any actual reliance. What is important is the intent of the person making the statement that it be in furtherance of some fraudulent purpose." *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) (quoting *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (per curiam)).

In determining whether a false statement is material, courts must ask the question whether the statement *objectively* had a natural tendency to influence, or was capable of influencing, a lender to approve a loan. *See Facchini*, 832 F.2d at 1162; *see also United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999) ("Evidence that the bank would not have relied on [the defendant's] representations, and instead would have made an exception for him, does not establish that the representations were immaterial . . . . the proper inquiry addresses not the defendant's ability to influence, but rather the nature of the statements made."). The First Circuit recently created a bright-line approach on this issue that we conclude is persuasive, and we follow it here. In *United States v. Appolon*, a mortgage fraud case, the defendant argued that the government failed to present evidence regarding the lender's loan evaluation process, and thus could not satisfy the

materiality element of wire fraud.  715 F.3d 362, 368 (1st Cir. 2013).  The First Circuit explained that the loan application had specifically requested information regarding the applicant's income, assets, and intent to reside in the property, and held that "[t]he fact that [the lender's] loan application explicitly sought this information from the applicant indicates that [the straw buyer's] responses were capable of influencing its decision."  *Id.*; *see also United States v. Prieto*, 812 F.3d 6, 14 (1st Cir. 2016) ("Even in the face of anecdotal evidence that, at the time, residential mortgage lenders were devoting scant resources to the verification of applicants' income levels, it is nevertheless fair to presume that a loan applicant's stated income level and plans for using the property in question would have a 'natural tendency' to influence a lender's decision.  Why else, after all, did the lender demand the information and Prieto take the risk of providing false information?" (internal citations omitted)).

We adopt the First Circuit's bright-line test, and hold, as a matter of law, that when a lender requests specific information in its loan applications, false responses to those specific requests are objectively material for purposes of proving fraud.  Applying this test to Lindsey's case, the district court properly excluded evidence that the lenders were allegedly negligent or intentional in disregarding Lindsey's fraudulent representations when approving loan applications.  This subjective evidence had no bearing on the objective materiality inquiry.  The government introduced evidence that the lenders specifically requested information about, *inter alia*, employment, income, and assets, and that

Lindsey provided false information with the intent to fraudulently secure loans.  We affirm Lindsey's convictions.

**AFFIRMED.**